IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RANDALL E.,[1] | : | Case No. 3:20-cv-084 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff filed an application for Disability Insurance Benefits in November 2015. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 11), Plaintiff's Reply (Doc. 12), and the administrative record (Doc. 8).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since May 1, 2015. At that time, he was fifty-three years old. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(d). Plaintiff is a college graduate and thus has a " high school education and above." *See* 20 C.F.R. § 404.1564(b)(4). He meets the insured status requirements through December 31, 2021.

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8, PageID 37-46), Plaintiff's Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 11), and Plaintiff's Reply (Doc. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." (*Id.*)

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (*Id.*) (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" (*Id.*) (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1: Plaintiff has not engaged in substantial gainful activity since May 1, 2015, the alleged onset date.
>
> Step 2: He has the severe impairments of "osteoarthritis and moderate degenerative changes of the hips with a history of avascular necrosis; glenohumeral arthrosis with mild hypertrophy of the left shoulder; right knee pain; history of right shoulder glenohumeral arthropathy with massive recurrent rotator cuff tear; biceps tear; superior labra tear; and status post right shoulder surgery repair."
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity (hereinafter "RFC"), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "less than the full range of light work" as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; [Plaintiff] can occasionally push and/or pull with the bilateral upper extremities;

4

> [Plaintiff] can occasionally push with the bilateral lower extremities; [Plaintiff] can stand and/or walk for 2 hours in an 8-hour workday; [Plaintiff] can sit for 6 hours in an 8- hour workday alternating every 15 minutes with 1-2 minutes to change position while remaining on task; [Plaintiff] can frequently use foot controls on the right, occasionally climb ramps and stairs, and stoop, but never kneel, crouch, or crawl; [Plaintiff] and [sic] frequently balance; [Plaintiff] can never climb ladders, ropes, or scaffolds; [Plaintiff] can occasionally reach overhead with the right upper extremity; [Plaintiff] can never work at unprotected heights or around dangerous machinery, [Plaintiff] can never operate a commercial motor vehicle."
>
> Plaintiff is capable of performing his past relevant work as a Certified Financial Planner "as generally performed."

(Doc. 8, PageID 39-46.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 46.)

V.     **ANALYSIS**

Plaintiff argues that the ALJ erred in evaluating the medical source opinions and medical evidence. Specifically, Plaintiff contends the ALJ erred by inadequately evaluating the assessments of orthopedic specialists Cory Gaiser, D.O., and Joseph DiCicco, D.O. (Doc. 9, PageID 805-810.) Because the Court finds this argument persuasive, it need not reach the other arguments raised by Plaintiff.

Social Security regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is

5

well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson,* 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." (*Id.*) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996))[2]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility for determining a claimant's RFC. *See*

---

[2] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

e.g., 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1520(a)(4)(iv) ("the administrative law judge . . . is responsible for assessing your [RFC]"). Significantly, the ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s)-- submitted by an individual's treating source or other acceptable medical sources." (*Id.*) (footnote omitted).

Dr. Gaiser

Dr. Gaiser provided several statements and assessments in the record. In an Attending Physician Statement for Plaintiff's long-term disability insurance carrier completed on January 10, 2015, Dr. Gaiser referred to a diagnosis of degenerative joint disease with symptoms of chronic right hip pain. (Doc.8, PageID 737-38.) When prompted for physical limitations, Dr. Gaiser opined Plaintiff needed to "sit and stand to comfort." (*Id.*) As for Plaintiff's "Level of Functional Impairment," Dr. Gaiser offered his opinion that Plaintiff could sit, stand, walk, and drive for a total of two to three hours each in an eight-hour workday, and he noted Plaintiff's ability to remain in each position consecutively with positional change was "limited." (*Id.*) Dr. Gaiser also noted Plaintiff's condition would "continue to deteriorate over time." (*Id.*)

In notes from a June 2015 phone conference, Dr. Gaiser indicated that Plaintiff might "have to discontinue working as any prolonged sitting, standing or walking exacerbate[d] his symptoms." (*Id.*, PageID 491.) He noted Plaintiff was "unable to tolerate driving to visit clients" and indicated his agreement with Plaintiff "being placed in an off work status." (*Id.*) A December 2015 treatment note from Dr. Gaiser indicated that Plaintiff was "going to continue in his off-work status. He is unable to sit or stand for any significant period of time or walk any significant period of time." (*Id.*, PageID 654.) In a June 2016 treatment note, Dr. Gaiser stated that Plaintiff was "unable to perform his activities of daily living and work duties because of the inability to sit, stand or drive for any extended period of time." (*Id.*, PageID 657.)

Dr. Gaiser completed another Attending Physician Statement on behalf of Plaintiff's long-term disability insurance carrier in June 2016. (*Id.,* PageID 722.) He indicated that Plaintiff had not returned to his prior level of functioning, that he did not expect improvement in Plaintiff's functional abilities, and that Plaintiff's prognosis was "unstable." (*Id.*) Dr. Gaiser opined to "current restrictions" of "sit/stand to comfort" and "no prolonged ambulating/driving." (*Id.*) As for "current limitations," Dr. Gaiser opined Plaintiff needed to "stay off uneven ground" and avoid "strenuous activities." (*Id.*) He noted he did not expect improvement in these restrictions or limitations. (*Id.*)

The ALJ referenced only Dr. Gaiser's June 2015 treatment note, and she wrote only that Dr. Gaiser indicated Plaintiff was "unable to tolerate driving" (Doc. 8, PageID 41). The ALJ did not mention any other statement or assessment from Dr. Gaiser; nor did she evaluate his opinions or assign weight to them. (*Id.*) Plaintiff contends the ALJ's

8

"failure to even mention Dr. Gaiser's treating specialist assessments—much less evaluate them pursuant to the regulatory criteria—constitutes reversible error." (Doc. 9, PageID 807, referencing 20 C.F.R. § 404.1527(c).) Defendant asserts that Dr. Gaiser's statements are not opinions and that the ALJ sufficiently addressed Dr. Gaiser's treatment notes in the decision. (Doc. 11, PageID 818-19.)

Section 404.1527(a)(1) of Title 20 of the Code of Federal Regulations defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments, including "symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." The regulations require ALJs to consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c) (emphasis added). The regulations also generally require ALJs to place more weight on opinions offered by treating physicians who have examined the claimant, unless the opinions are contradicted by substantial evidence. *Id.,* § 404.1527(c)(1), (2); see *Keeton v. Comm'r of Soc. Sec.,* 583 F. App'x 515, 528 (6th Cir. 2014).

Several of Dr. Gaiser's statements are clearly "medical opinions" that should have been addressed and weighed by the ALJ. For example, the ALJ should have evaluated Dr. Gaiser's statement that Plaintiff was unable to sit or stand "for any significant period of time" and that he could "sit/stand to comfort" (Doc 8, PageID 654, 722.). Defendant argues that this is not a medical opinion because the statement does not "specify what [Plaintiff] could still do despite his impairments, nor did they include a prognosis." (Doc.

9

11, PageID 819). Defendant further asserts that Dr. Gaiser "did not define how much time was 'significant" and did not say how long this limitation would last." (*Id.*)

Defendant's arguments are not well-taken. The regulations do not require that a statement include certain specific elements, such as the length of a restriction or limitation, to qualify as a medical opinion. Dr. Gaiser's statement that Plaintiff is unable to sit or stand "for any significant period of time" constitutes a "physical restriction" under the definition of a "medical opinion" in 20 C.F.R. § 404.1527(a)(1). Dr. Gaiser's failure to define "significant" or indicate how long the limitation would last may render the assessment somewhat vague, but the restriction nevertheless falls under the definition of a "medical opinion." Any such vagueness should be evaluated under the factors to be considered in deciding the weight to be given to a medical opinion under 20 C.F.R. § 404.1527(c). Because this statement from Dr. Gaiser constitutes a "medical opinion," the ALJ should have evaluated it in the decision pursuant to 20 C.F.R. § 404.1527(c).

The ALJ's failure to comply with applicable Social Security regulations is a legal error that requires reversal. Further, the ALJ's omission does not constitute harmless error because Dr. Gaiser's opinion contradicts the ALJ's RFC. *See Wilson v. Comm'r of Soc. Sec.,* 378 F. 3d 541, 547 (6th Cir. 2004). Specifically, although the ALJ included a "sit/stand option" (the limitation allowing Plaintiff to alternate positions every 15 minutes with one to two minutes to change positions while remaining on task), the allowance to change position applies only to the sitting restriction in the RFC. (Doc. 8, PageID 40.) The ALJ otherwise concluded that Plaintiff could stand and/or walk for a full two hours in an eight-hour workday – with no allowance for such a change in position while

10

standing or walking. (*Id.*). Dr. Gaiser's opinion that Plaintiff is unable to stand "for any significant period of time" contradicts the ALJ's finding that Plaintiff is able to stand and/or walk for two hours in an eight-hour workday. Because Dr. Gaiser's opinion is more restrictive than the RFC, the ALJ's failure to evaluate the opinion constitutes reversible error.

Similarly, Dr. Gaiser's statements in the January 2015 Attending Physician Statement clearly fall under the definition of a "medical opinion" set forth in 20 C.F.R. § 404.1527(a) and contradict the ALJ's RFC. As discussed above, Dr. Gaiser indicated that Plaintiff can sit, stand, walk, and drive for a total of two to three hours each in an eight-hour workday, and that Plaintiff's ability to remain in each position consecutively with positional change is "limited." These statements constitute "physical restrictions" under the definition of a medical opinion in 20 C.F.R. § 404.1527(a)(1). Although Dr. Gaiser did not define "limited," the vagueness of the statement does not preclude it from falling under the definition of a "medical opinion." Accordingly, the ALJ should have evaluated and weighed this opinion in the decision, and any vagueness should have been considered under the 20 C.F.R. § 404.1527(c) factors. Further, Dr. Gaiser's opinion that Plaintiff's ability to stand/walk consecutively was "limited" arguably contradicts the ALJ's RFC that Plaintiff can stand and/or walk for two hours. This is another reason why the ALJ should have explained the weight afforded to this opinion. The ALJ's failure to evaluate Dr. Gaiser's opinions in accordance with the applicable Social Security regulations constitutes reversible error.

<u>Dr. DiCicco</u>

11

Orthopedic surgeon Dr. DiCicco began seeing Plaintiff as early as October 2012 for complaints of hip, right knee, and right upper extremity pain. (Doc. 8, PageID 475-486, 516-526, 674-695, 764-799.) Progress notes from Dr. DiCicco and his associates at Orthopedic Associates of Southwest Ohio documented Plaintiff's subjective complaints of ongoing pain, as well as objective findings that included mild swelling, restricted internal rotation and flexion of the hips with end-range pain, limited range of motion of the knee, and an antalgic and/or limping gait. (*Id.*) Dr. DiCicco administered several pain injections over the course of treatment. (*Id.*)

Dr. DiCicco completed an Attending Physician Statement on behalf of Plaintiff's long-term disability insurance carrier on January 6, 2015. (Doc. 8, PageID 708-09.) Dr. DiCicco opined that Plaintiff would "encounter problems [with his] previous work schedule (below 50%)," due to constant hip pain. (*Id.,* PageID 708.) According to Dr. DiCicco, Plaintiff was unable to perform any repetitive lifting or carrying activities, as well as no squatting or kneeling and "occasional bend/stoop positions." (*Id.*) Dr. DiCicco further opined that Plaintiff needed to "alternate sit/stand/walk activities during [the] work shift/day to avoid stressing joints" and that he was limited to lifting and carrying 11 to 20 pounds "occasionally – not repetitive." (*Id.*) Dr. DiCicco indicated that he expected these limitations to be permanent. (*Id.*)

Dr. DiCicco also completed an Attending Physician Statement for another insurer on January 6, 2015. (*Id.,* PageID 735-36.) Dr. DiCicco indicated he had been seeing Plaintiff on an as-needed basis since December 2012. (*Id.,* PageID 735.) He opined that Plaintiff could lift and carry 11 to 20 pounds but "not on [a] repetitive basis." (*Id.*) He

opined that Plaintiff should alternate positions as needed when sitting, standing, and walking. (*Id.*) According to Dr. DiCicco, Plaintiff could never squat or kneel, and he could occasionally bend, stoop, twist, lift, and carry. (*Id.*) Although Dr. DiCicco referred to a "good" prognosis, he further noted that Plaintiff would "likely miss work days secondary to hip issues and diagnosis as noted." (*Id.,* PageID 736.)

Dr. DiCicco also provided an assessment in a treatment note dated June 4, 2015. He stated:

> In my opinion, [Plaintiff] is disabled due to the severe arthritis in his right hip. He has a continuous limp, making it hard to get around and almost impossible to travel due to the pain. [Plaintiff] is unable to stand for long periods of time. It is extremely difficult to climb a flight of stairs. [Plaintiff] has extreme difficulty getting in and out of vehicles…After being seated for a long time, it is almost unbearable for [Plaintiff] to stand up. (*Id.,* 475.)

The ALJ addressed and summarized only this June 2015 assessment from Dr. DiCicco. She did not address either of his January 2015 statements.[3] (Doc. 8, PageID 45.)

The ALJ concluded that Dr. DiCicco's opinion is not entitled to controlling or deferential weight because it is "not well supported by medically acceptable clinical findings in the record and is inconsistent with other substantial medical evidence of record." (*Id.*) The ALJ assigned little weight to this assessment, citing evidence that Plaintiff "has been able to ambulate without the use of an assistive device, travel on a regular basis out of the state, and leave his house on a generally consistent basis without issue." (*Id.*) The ALJ also referenced Plaintiff's reports that he "does not have any issues

---

[3] The ALJ referred to Dr. DiCicco's treatment note dated "June 4, 2016" and referenced Exhibit 1F, page 1. (Doc. 8, PageID 45.) However, Exhibit 1F, page 1 corresponds with Doc. 8, PageID 475. Thus, the Court concludes the reference to 2016 constitutes a typographical error.

13

dressing, bathing, caring for his hair, shaving, or using the toilet" and concluded that this evidence "suggest[s] at least some level of functional mobility." (*Id.*) Further, the ALJ stated that Dr. DiCicco's assessment "does not provide a function-by-function assessment of [Plaintiff's] limitations expressed by the most he can do." (*Id.*)

The ALJ committed reversible error in the analysis of Dr. DiCicco's opinions. The regulations require ALJs to consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c) (emphasis added). The regulations also generally require ALJs to place more weight on opinions offered by treating physicians who have examined the claimant, unless those opinions are contradicted by substantial evidence. *Id.,* § 404.1527(c)(1), (2); see *Keeton,* 583 F. App'x 515, 528 (6th Cir. 2014). As discussed above, the ALJ addressed only Dr. DiCicco's June 2015 assessment. By failing to consider Dr. DiCicco's January 2015 opinions, the ALJ did not fulfill the obligation to evaluate every medical opinion from Dr. DiCicco or to explain the reasons for assigning weight to them.

This failure to follow the applicable regulations was not harmless error. Although some of the limitations in the January 2015 opinions also appear in Dr. DiCicco's June 2015 assessment, other limitations do not. For example, Dr. DiCicco opined in January 2015 that Plaintiff would "likely miss work days secondary to hip issues" (*Id.,* PageID 736), but did not include that opinion in the June 2015 treatment note. (*Id.,* PageID 475.) Dr. DiCicco also opined in January 2015 that Plaintiff needed to alternate positions while standing or walking "as needed." (Doc. 8, PageID 735; see also *Id.,* PageID 708.) However, in June 2015, Dr. DiCicco opined only that Plaintiff had "a continuous limp"

14

which made it "hard to get around and almost impossible to travel" and that he was "unable to stand for long periods of time." (*Id.,* PageID 475.) Thus, the January 2015 and June 2015 opinions are substantially different. Further, these portions of the January 2015 opinions are not accounted for in the RFC. The ALJ concluded that Plaintiff can stand and/or walk for two hours in an eight-hour workday, with no allowance for a change in position. (Doc. 8, PageID 40.) As discussed above, the "sit/stand" restriction in the RFC allowing Plaintiff to alternate positions every 15 minutes with one to two minutes to change position while remaining on task applies only to the six-hour sitting limitation, not to Plaintiff's ability to stand or walk. (*Id.,* PageID 40.) Moreover, the RFC contains no allowance for absenteeism, although Dr. DiCicco's January 2015 opinions suggest that absenteeism will be an issue. (*Id.*) The ALJ's failure to evaluate Dr. DiCicco's January 2015 opinions constitutes reversible error.

It is also notable that the ALJ wrongly described Dr. DiCicco as Plaintiff's "primary care physician." (*Id.,* PageID 45.) Dr. DiCicco's records indicate that he is an orthopedic surgeon who treated Plaintiff for his hip condition beginning as early as October 2012. (*Id.,* PageID 475-486.) The regulations generally require ALJs to give more weight to the "opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Thus, by mistakenly identifying Dr. DiCicco as Plaintiff's primary care physician, the ALJ did not adequately consider the required factor of "specialization." In this respect, too, the ALJ failed to follow the applicable regulations and committed reversible error.

15

In sum, the ALJ wrongly failed to evaluate Dr. DiCicco's January 2015 opinions and did not adequately consider Dr. DiCicco's status as a specialist. The ALJ's failure to evaluate Dr. DiCicco's opinions in accordance with the applicable Social Security regulations constitutes reversible error.

## VI. CONCLUSION

The ALJ committed reversible error by failing to evaluate the opinions of treating physicians Drs. Gaiser and DiCicco in accordance with Social Security regulations. Accordingly, reversal is warranted.

## VII. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, see *Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, see *Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, see *Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, see *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78

(1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. E.g., *Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

     A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

    1.     Plaintiff's Statement of Errors (Doc. 9) is GRANTED;

    2.     The Court REVERSES the Commissioner's non-disability determination;

    3.     No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
